UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CAMILLE L. CAGGIANO,

                       Plaintiff,

   v.                                        **DECISION AND ORDER**
                                                     07-CV-361S

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

                       Defendant.

1.      Plaintiff Camille L. Caggiano challenges an Administrative Law Judge's ("ALJ") determination that she is not disabled within the meaning of the Social Security Act ("the Act").  Plaintiff alleges that she has been disabled since December 3, 2002, by panic attacks, migraines, anxiety, and depression.  Plaintiff contends that because her impairments render her unable to work, she is entitled to benefits under the Act.

2.      Plaintiff filed an application for disability insurance benefits on August 4, 2003. After her application was denied, Plaintiff requested a hearing before an ALJ. The ALJ conducted a video teleconference hearing on June 9, 2006, at which Plaintiff appeared with her representative and testified.  Vocational expert James Phillips also testified. The ALJ considered the case *de novo*, and on June 29, 2006, issued a written decision denying Plaintiff's application for benefits.  On April 27, 2007, the Appeals Council denied Plaintiff's request for review.

3.      Plaintiff filed this action challenging Defendant's final decision on June 6, 2007.[1]  On December 31, 2007, each party filed a Motion for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  At the conclusion of briefing on February 22, 2008, this Court took the motions under advisement without oral argument.  For the following reasons, Defendant's motion is granted and Plaintiff's is denied.

4.      A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5.      "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the

---

[1] The ALJ's decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

      6.      The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act. See 20 C.F.R. § § 404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled. 482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987)

      7.      This five-step process is detailed below:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

8. Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step is divided into two parts: First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9. In this case, the ALJ made the following findings with regard to the five-step process set forth above: (1) Plaintiff has not engaged in substantial gainful activity during the relevant time period (R. at 16);[2] (2) Plaintiff's depressive disorder, panic disorder with agoraphobia, and personality disorder are "severe" impairments within the meaning of the Act (R. at 16); (3) Plaintiff's mental impairments do not meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulation No. 4 (R. at 17); (4) Plaintiff retains the residual functional capacity "to perform jobs that require no more than brief, superficial contacts with co-workers and no interactions with the general public. She is able to remember, understand and carry out no more than simple instructions and make simple work-related decisions. Ms. Caggiano can perform activities that do not involve rapid assembly line work, high production rate quotas or require more than 8 hours in a shift" (R. at 17); (5) Plaintiff is unable to perform any of her past work (R. at 21); and (6) Plaintiff is a "younger individual" who retains the residual functional capacity to perform

---

[2] Citations to the underlying administrative record are designated as "R."

work available in the national economy (R. at 21-22).  Ultimately, the ALJ concluded that Plaintiff was not under a disability as defined by the Act at any time through the date of his decision.  (R. at 22-23.)

      10.     Plaintiff lodges a number of challenges to the ALJ's decision.  One argument centers around the ALJ's conclusion that Plaintiff's long-standing headache condition is non-severe because it is controlled with medication.  (R. at 17.)  At step two of the sequential evaluation, the ALJ found that Plaintiff's headaches are non-severe because "they have been responsive to conservative treatment and/or impose no more than minimal vocationally relevant limitations."  (R. at 17.)  Plaintiff argues that this conclusion is not supported by substantial evidence in the record.  This Court agrees.

M. Reza Samie, M.D., a neurologist, treated Plaintiff for migraines.  (R. at 210, 211).  On January 25, 2003, Dr. Samie opined that Plaintiff had an "underlying migraine and anxiety disorder" and placed her on Maxalt and Nortriptyline.  (R. at 211-12.)  She noted that Plaintiff's headaches occurred several times per week and were moderate to severe, at times accompanied by nausea photophobia and worse with exertion.  (R. at 211.)  One month later, Plaintiff reported to Dr. Samie that she experienced "no major improvement" and continued to have headaches.  (R. at 210.)  Despite this complaint, Dr. Samie assessed Plaintiff's migraines as "stable and improved" and continued her on medication.  (R. at 210.)

Plaintiff's physician, Geraldine Kelly, M.D., also noted Plaintiff's headaches.  (R. at 156, 159.)  On March 5, 2003, Plaintiff went to her physician, Geraldine Kelly, M.D., who noted that Plaintiff continued experiencing headaches and was seeing Dr. Samie for treatment.  (R. at 156, 159.)  She saw Dr. Samie again on April 29, 2003, and reported that

although her headaches were "less intense," she still had them at least once a week. (R. at 209.) Plaintiff returned to Dr. Kelly about 3 months later, on May 29, 2003, and again complained of migraines and was continued on medication. (R. at 156.)

About two months later, on July 29, 2003, Plaintiff returned to Dr. Samie, who noted that Plaintiff "continues to have headaches at times intense." (R. at 208.) Dr. Samie directed Plaintiff to keep a "headache diary." (R. at 208.) On November 10, 2003, Dr. Samie noted that Plaintiff had "no new symptoms, complaints, or problems," but also noted that Plaintiff was now complaining of daily headaches. (R. at 207.)

On January 27, 2004, Plaintiff saw Janis L. Dale, M.D., who noted that Plaintiff reported having migraines and daily headaches, but concluded that the migraine headaches were relieved by medication. (R. at 213.) Plaintiff continued to complain of migraines on February 11, 2005 (R. at 273), January 9, 2006 (R. at 355), and April or May 2006 (R. at 365.)

Plaintiff also testified about her headaches before the ALJ on June 9, 2006. She testified that she continues to experience migraines three or four times per month. (R. at 389, 396.) She stated that she takes Maxalt when she has a migraine, and that the medication generally works if she "catches [the migraine] in time." (R. at 396.) Plaintiff testified that the Maxalt "definitely" makes her sleepy, and further explained the effect it has on her:

> When I take the medication, it usually takes about 20 minutes for it to start to - - excuse me - - take effect. It makes me very sleepy, so I'll go and lay down and I'll probably sleep a good two hours. And usually when I wake up, it's gone. There are times that if it doesn't work, the doctor told me that after two hours if the headache isn't gone, I can go ahead and take another one.

(R. at 396.)

6

Based on this evidence, this Court finds that the ALJ's conclusion that Plaintiff's headache condition is non-severe and does not impose more than a minimal vocationally relevant limitation is unsupported by the record. (R. at 17.) The evidence discussed above demonstrates that Plaintiff has continuously experienced headaches of varying degrees and repeatedly complained about them to her medical providers. Although medication may have alleviated some of the symptoms, there is little basis to conclude that Plaintiff's headaches were completely managed by medication, as demonstrated by the fact that Plaintiff repeatedly complained about them. Moreover, there is no indication that the ALJ considered the fact that even if Plaintiff's headaches were relieved by medication, the medication made Plaintiff drowsy and required her to sleep for two hours after taking it. If found credible and supported by objective medical evidence, this would likely limit the work Plaintiff is able to perform.

Because the ALJ did not properly evaluate Plaintiff's headaches, his residual functional capacity determination, which does not account for this condition or the side effects of Plaintiff's medication, is necessarily flawed and unsupported by the record. Consequently, this case will be remanded for the ALJ to fully evaluate whether Plaintiff's headache condition is a severe impairment, and at the very least, consider this condition in combination with Plaintiff's other severe impairments when determining an appropriate residual functional capacity.

11.     Plaintiff also contends that the ALJ erred by (1) misapplying the "treating physician rule"[3] as it relates to the opinions of Plaintiff's treating psychiatrist, Jeffrey Kashin, M.D.; (2) failing to adequately develop the record; (3) failing to properly evaluate

---

[3] "The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No. 03-Civ.0075(RCC)(AJP), 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

7

her mental impairments under the procedure set forth in 20 C.F.R. § 404.1520a; (4) improperly finding her less than credible; and (5) posing unsupported or incomplete hypothetical questions to the vocational expert.  At this time, since this case will be remanded for further proceedings, this Court offers no opinion on these issues.  Plaintiff is free to raise these concerns on remand, if necessary.

12. After carefully examining the administrative record, this Court finds cause to remand this case to the ALJ for further administrative proceedings consistent with this decision.  Plaintiff's Motion for Judgment on the Pleadings is therefore granted.  Defendant's motion seeking the same relief is denied.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 7) is GRANTED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 8) is DENIED.

FURTHER, that this case is REMANDED to the Commissioner of Social Security for further proceedings consistent with this Decision and Order.

FURTHER, that the Clerk of the Court is directed to close this case.

SO ORDERED.

Dated:   September 26, 2008
            Buffalo, New York

/s/William M. Skretny
WILLIAM M. SKRETNY
United States District Judge